1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8      FOR THE NORTHERN DISTRICT OF CALIFORNIA

9              SAN JOSE DIVISION

10

11   Susan Mezzetti,                          NO. C 04-3022 JW

12          Plaintiff(s),

13          v.                                **ORDER GRANTING STATE FARM'S**
                                              **MOTION FOR SUMMARY JUDGMENT**
14   State Farm Mutual Automobile Insurance
     Company,

15
            Defendant(s).
16

17   _____

18                      **I.  INTRODUCTION**

19          In May of 1995, Plaintiff Susan Mezzetti ("Mezzetti") and her passengers were injured in an

20   automobile accident allegedly caused by a high speed chase.  Mezzetti's vehicle was insured through

21   Defendant State Farm Mutual Automobile Insurance Company ("State Farm").  Nancy Clewett

22   ("Clewett") was the registered owner of the two vehicles engaged in the alleged high speed chase, a

23   Toyota Camry and a Toyota pick-up truck. The truck made impact with Mezzetti's vehicle.

24   Mezzetti filed a claim with State Farm under Clewett's putative State Farm policy.  State Farm

25   denied Mezzetti's claim on the basis that Clewett did not have a State Farm policy covering the

26   truck.  In doing so, State Farm allegedly falsely represented that Clewett had no insurance coverage

27   for any portion of the accident, while knowing that Clewett had insurance coverage on the Camry.

28   Mezzetti's First Amended Complaint asserts, inter alia, a number of claims rooted in

**United States District Court**
For the Northern District of California

1    misrepresentation.[1]

2         State Farm moves for summary judgment, or in the alternative partial summary judgment.

3    State Farm contends, among other things, that the claims are barred by the applicable statutes of

4    limitations.  On November 14, 2005, this Court held a hearing regarding State Farm's motion.  Based

5    upon all papers filed to date and the comments of counsel, this Court grants State Farm's motion.

6                                            **II.  BACKGROUND**

7         Clewett originally had a written policy of automobile insurance with State Farm for her

8    Toyota pick-up truck.  She later purchased a new vehicle, a Toyota Camry, and accordingly in

9    January of 1995, Clewett replaced the truck with her Camry on the State Farm policy.[2]  Also in

10   January of 1995, Clewett sold the truck to her boyfriend; however, she remained the registered

11   owner of both vehicles.  Howard apparently did not purchase any automobile insurance for the truck.

12        On May 5, 1995, Clewett was in her Camry following her boyfriend, Howard, who was

13   driving in the truck, when Howard struck a vehicle operated by Mezzetti near the corner of N.

14   Monroe Street and Cory Avenue in San Jose, California.  At the time, Mezzetti, who was seven

15   months pregnant, was transporting her three minor children and another minor child.  The police

16   report concluded that Howard caused the accident by driving at an extremely excessive speed and

17   trying to overtake Mezzetti's vehicle.  The police report did not identify any other persons as

18   potentially at fault for the accident.  The police report included a witness statement by Clewett,

19   however, indicating that she "rushed [Howard] out of the shower so they could get to Jiffy Lube

20   before 5:00 p.m. (1700 hrs) to get [the truck] a smog check," and that "they were in a hurry."  Decl.

21   of Matthew J. Curley, Ex.  2.

22        After reading the police report, Mezzetti's attorney "immediately determined that Clewett

23

24   ─────────────────────

25        [1] Jurisdiction here is based upon removal, 28 U.S.C. § 1441(a), and diversity of citizenship,
     28 U.S.C. § 1332(a)(1).

26        [2] When Clewett replaced her truck with the Camry on the insurance policy, State Farm
     automatically continued insurance coverage on the truck for the next thirty-days pursuant to State
27   Farm's policy regarding "replaced" vehicles.

28                                                    2

United States District Court
For the Northern District of California

and Howard had engaged in a high speed chase and therefore Clewett was partially at fault in the

accident." Decl. of Robert Mezzetti II, p.2.

Mezzetti's attorney sent Clewett a letter dated May 19, 1995 asserting a claim against her for

the accident. The letter stated, in pertinent part:

> Our investigation reveals you are the registered owner of the vehicle which Mr.
> Howard was driving and that you are partially at fault in the accident. Please provide
> us . . . with the name of your insurance company, the policy number, and the policy
> limits on the 1993 Toyota pick-up which Mr. Howard was driving at the time of the
> accident.

Decl. of Matthew J. Curly, Ex. 3.   In mid to late May, Mezzetti's attorney spoke to Howard, who

informed him that:

> Nancy Clewett would become upset with him when he accused her of lying about a
> bank robbery at Security Pacific and that when he was in the shower on the day of the
> accident they argued over the bank robbery issue. Clewett threatened Howard and
> chased him from the shower. Howard jumped out of the shower and with only a
> towel on ran to the pick-up and sped away. Clewett gave chase in her Camry. They
> proceeded down Naglee towards Monroe. Clewett was two feet behind Howard
> when they got to Monroe.

Decl. of Robert Mezzetti II, pp. 3-4. On May 22, 1995, Mezzetti's attorney spoke to State Farm

Claims Representative Danielle Spier ("Spier") regarding the accident. Id. at p.4. The notes of the

conversation retained by Mezzetti's attorney indicate that they discussed a number of issues. In

pertinent part, the notes reflect that there was a "coverage issue"; that in January Clewett bought a

new car and gave notice that she was replacing the truck; that in March, Clewett sent a letter

cancelling the insurance on the truck; and that on May 8, 1995, State Farm received a letter and

check dated May 1, 1995, asking that State Farm reinstate coverage on the truck because she was

going to be driving it. Decl. of Stephen Ellingson, Ex. 25. The notes also reflect that Mezzetti's

attorney told Spier the substance of his conversation with Howard. Id.

State Farm investigated whether Clewett's policy was in force on the truck, and concluded

there was none. State Farm so informed Clewett in a letter dated June 21, 1995. State Farm

similarly advised Mezzetti in a letter dated June 30, 1995. This letter lies at the crux of this lawsuit.

In its entirety, the letter's body reads as follows:

United States District Court

For the Northern District of California

3

We have completed our investigation on the question of coverage surrounding the above-captioned loss.

Based on our investigation, there was no State Farm policy in force on the vehicle involved on the above date of loss.  Therefore, there is no coverage under this State Farm policy.

If you have any questions, please feel free to contact me.

Curley Decl., Ex. 5.  Mezzetti claims that, by this letter, State Farm fraudulently denied the existence of a State Farm policy which covered any portion of the accident.  Significantly, it is undisputed that there was no State Farm policy to cover the truck involved in the accident.  Nevertheless, Mezzetti construes the letter as a denial of any State Farm policy to cover the Camry allegedly involved in the high speed chase.

In alleged reliance upon these representations, Mezzetti sought compensation elsewhere: under her own State Farm Uninsured Motorist ("UM") policy.  Mezzetti and State Farm agreed to a $100,000 settlement, the maximum amount under Mezzetti's UM policy.

Approximately one year after the accident, Mezzetti filed suit against Clewett and Howard (hereinafter "Mezzetti I lawsuit").  The complaint alleged that Clewett and Howard were involved in a "high speed chase" on a residential street and caused the accident.  Request for Judicial Notice, Ex. 17.[3]  Pursuant to the terms of her State Farm policy, Clewett was required to notify State Farm that this complaint had been filed.  Clewett failed to provide the required notice, and State Farm did not discover the Mezzetti I lawsuit had been filed until April 2002.  On October 15, 1999, Mezzetti obtained default judgment against Clewett in the sum of $643,382.  The time to appeal the default judgment expired 180 days later, on April 12, 2000.

Mezzetti's son, a minor at the time of the accident, filed a second lawsuit against Clewett in April 2002, after reaching the age of majority (hereinafter "Mezzetti II lawsuit").  The complaint included the allegation of a "high speed chase."  Request for Judicial Notice, Ex. 24.  This time, Clewett timely tendered the Mezzetti II lawsuit to State Farm, and State Farm accepted her defense

---

[3]  State Farm's Request for Judicial Notice is granted.

United States District Court

For the Northern District of California

1 under a reservation of rights.  The status of the Mezzetti II lawsuit is unknown.

2    On June 16, 2004, Mezzetti filed the instant lawsuit against State Farm in Santa Clara

3 County Superior Court.  State Farm removed the lawsuit pursuant to 28 U.S.C § 1441(a).  Mezzetti's

4 First Amended Complaint alleges five state law causes of action:  (1) Collection/Satisfaction of

5 Judgment Under Section 11580 of the California Insurance Code, (2) Declaratory Relief, (3) Fraud--

6 False Representation, (4) Constructive Fraud--Section 1573 of the California Civil Code, and (5)

7 Negligent Misrepresentation.  Mezzetti prays for, inter alia, "the sum of $200,000[,] . . . general

8 damages in the amount of $500,000 for mental suffering and emotional distress[, and] punitive

9 damages."  (First Amended Complaint at 8.)

10    State Farm now moves for summary judgment on numerous grounds.  State Farm contends

11 that Mezzetti cannot prevail on the first claim because (1) it is barred by the four-year statute of

12 limitations; and (2) Clewett failed to provide State Farm with timely notice of the Mezzetti I lawsuit.

13 State Farm contends that the first and second claim fail because Mezzetti assigned to State Farm any

14 and all right to recover any proceeds paid by or on behalf of a tortfeasor who caused Mezzetti's

15 injuries.  State Farm contends that the third, fourth, and fifth claims fail because (1) they are barred

16 by the three-year statute of limitations; (2) they are barred by the litigation privilege; (3) State Farm

17 made no actionable misrepresentations; and (4) Mezzetti did not justifiably rely on any purported

18 misrepresentations.  Further, State Farm contends that the fourth claim fails because Mezzetti did not

19 have a confidential or fiduciary relationship with State Farm.  Lastly, State Farm contends that the

20 claim for punitive damages fails because there is no clear and convincing evidence of malice, fraud,

21 or oppression.

22              **III.  STANDARDS**

23    Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

24 admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

25 material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

26 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims

27

28                 5

**United States District Court**
For the Northern District of California

or defenses."  <u>Celotex v. Catrett</u>, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323.  If the moving party meets this burden, that party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial.  <u>Id.</u> at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial. " Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties.  To preclude the entry of summary judgment, the non-moving party must bring forth material facts,  i.e., "facts that might affect the outcome of the suit under the governing law  .  .  . Factual disputes that are irrelevant or unnecessary will not be counted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence.  <u>Masson v. New Yorker Magazine, Inc.</u>, 501 U.S. 496, 520 (1991) (citing <u>Anderson</u>, 477 U.S. at 255); <u>Matsushita</u>, 475 U.S. at 588; <u>T.W. Elec. Serv. v. Pac. Elec. Contractors</u>, 809 F.2d 626, 630 (9th Cir. 1987).  It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>,

1  477 U.S. at 248.  However, "[w]here the record taken as a whole could not lead a rational trier of

2  fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at

3  587.

## IV.  DISCUSSION

**A.**　　**State Farm is Entitled to Summary Judgment on the First Claim for Collection/Satisfaction of Judgment**

Mezzetti's first claim is brought under California Insurance Code §11580 to recover

Clewett's policy limits from State Farm.  State Farm contends it is entitled to summary judgment on

the claim because (1) the clam is untimely and (2) barred due to Clewett's failure to tender the

Mezzetti I lawsuit.  Both defenses warrant summary judgment in State Farm's favor for the reasons

set forth below.[4]

**1.   The Statute of Limitations Bars The First Claim**

State Farm contends the first claim is barred by the applicable statute of limitations.  The

statute of limitations for a judgment creditor claim predicated on Insurance Code §11580 is four

years.  California Code of Civil Procedure §337.  The statute of limitations commences upon the

entry of final judgment against the insured.  <u>Hand v. Farmers Insurance Exchange</u>, 23 Cal.App.4th

1847, 1857 (1994); <u>Woolett v. American Employers Ins. Co.</u>, 77 Cal.App.3d 619, 624 (1978).

In the instant case, it is undisputed that default judgment against Clewett was entered on

October 15, 1999, and became final when the time to appeal expired 180 days later on April 12,

2000.  Mezzetti brought her §11580 claim on June 16, 2004, nearly two months after the expiration

of the four year statute of limitations.  Accordingly, the claim is untimely.  Nevertheless, Mezzetti

contends that State Farm should be equitably estopped from asserting the statute of limitations as a

defense because State Farm allegedly misrepresented that "there was no State Farm policy in force."

Opposition, p.7.

---

[4] In total,  State Farm has asserted three separate and independent defenses to the first claim. Because two of the three defenses clearly apply, the Court finds it unnecessary to address State Farm's third defense to the claim based upon an assignment theory.

United States District Court
For the Northern District of California

1    Under California law, an insurer may be estopped from asserting the statute of limitations as

2  a defense if the insurer misrepresents a fact, and the insured reasonably relies upon the fact and

3  refrains from filing suit.  Vu v. Prudential Property & Casualty Insurance Co., 26 Cal.4th 1142

4  1151-1153 (2001).  In contrast, however, a denial of coverage, even if phrased as a "representation"

5  that the policy does not cover the insured's claim does not provide a basis for estoppel.  Id. at 1152.

6    In the present case, State Farm did not misrepresent any facts.  The police report establishes

7  that the "vehicle involved" in the accident was the truck driven by Clewett's boyfriend.  State Farm

8  similarly considered the "vehicle involved" as the truck driven by Clewett's boyfriend.  Mezzetti has

9  not presented any evidence to prove otherwise.  Construing the evidence in a light most favorable to

10  Mezzetti, the evidence suggests, at most, that Mezzetti believed there was more than one vehicle

11  involved in the accident based upon his conversation with Howard, and that he conveyed his belief

12  to State Farm.  There is no evidence, however, that State Farm shared Mezzetti's belief.  Rather, the

13  evidence shows that State Farm investigated insurance coverage for the truck, which is consistent

14  with State Farm's reference to "vehicle" in the singular in its June 30, 1995 letter.

15    The estoppel theory also fails because Mezzetti could not have reasonably relied upon the

16  alleged misrepresentation. The undisputed evidence establishes that at the time Mezzetti received the

17  letter, Mezzetti knew Clewett had a policy on her Camry; knew the Camry was potentially involved

18  in the accident because Clewett and Howard had allegedly engaged in a "high speed chase"; and

19  knew there was a coverage question regarding the truck

20    Furthermore, to the extent the letter made any representation at all, it was a denial of

21  coverage, and therefore provides no basis for estoppel as a matter of law.  Vu, supra.  Accordingly,

22  Mezzetti's estoppel theory fails.

23    **2.  Clewett's Failure to Tender the Mezzetti I Lawsuit Also Bars The First Claim**

24    As a third party judgment creditor against Clewett, Mezzetti is subject to the terms and

25  conditions of Clewett's policy.  California Code of Civil Procedure §11580(b)(2).  This includes the

26  defense that the insured breached the cooperation clause.  Hall v. Travelers Ins. Cos., 15 Cal.App.3d

27

28                                          8

304, 308 (1971).  Thus, where the insured fails to notify the insurer of a suit and the insurer suffers

substantial prejudice, the insurer may assert the notice-prejudice rule as a defense to a §11580 claim.

Id.; Campbell v. Allstate Ins. Co., 60 Cal.2d 303, 306 (1963).

It is undisputed that Clewett's State Farm policy required her to send a copy of the Mezzetti I

complaint to State Farm.  It is further undisputed that Clewett failed to give State Farm notice of the

Mezzetti I lawsuit, and that failure to give notice prejudiced State Farm.

Mezzetti contends, however, that Clewett's duty to tender was discharged by State Farm's

denial of coverage.  As discussed previously, however, State Farm did not deny coverage to Clewett

for her alleged participation in a high speed chase while driving her own Camry.  As such, caselaw

excusing an insured's duty to cooperate and give notice of a lawsuit does not apply.  See e.g.

Samson v. Transamerica Ins. Co., 30 Cal.3d 220 (1981).  Accordingly, Mezzetti's first claim is

barred by Clewett's failure to give notice of the Mezzetti I lawsuit.

**B.  State Farm is Entitled to Summary Judgment on the Fraud Claims**

Mezzetti's third, fourth, and fifth claims are based upon State Farm's alleged fraud. State

Farm contends the fraud claims must fail because they are untimely and lack evidentiary support.

The Court finds merit in both contentions for the reasons set forth below.[5]

**1.  The Statute of Limitations Bar Plaintiff's Claims for Fraud**

First, State Farm contends that the fraud claims are untimely.  The statute of limitations for

fraud or mistake is three years.  California Code of Civil Procedure §338(d).  The plaintiff has the

burden of proof to invoke the "delayed discovery" rule to argue her ignorance delayed the accrual of

her cause of action.  Weir v. Snow, 210 Cal.App.2d 283, 292 (1962).  In the context of the statute of

limitations, "discovery" means when the plaintiff suspected or should have suspected that an injury

was caused by defendant's wrongdoing.  Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1110-1111 (1988).

Mezzetti's fraud claims are based upon Sate Farm's June 30, 1995 letter in which State Farm

---

[5]  In total, State Far has asserted three separate and independent defenses to the fraud claims. Because the Court finds that the fraud claims are time barred and lack evidentiary support, the Court finds it unnecessary to address State Farm's third defense based upon the litigation privilege.

United States District Court

For the Northern District of California

1  stated that "there was no State Farm policy in force on the vehicle involved on the above date of

2  loss." Mezzetti, however, did not file suit until June 16, 2004, well over three years later. Thus,

3  absent application of the "delayed discovery" rule, Mezzetti's fraud claims are barred by the statute

4  of limitations.

5        Mezzetti contends that she did not discover the fraud until 2002, after the Mezzetti II lawsuit

6  was in progress. The undisputed evidence, however, establishes that Mezzetti should have

7  discovered the fraud upon receiving the June 30, 1995 letter, and therefore cannot avail herself of the

8  "delayed discovery" rule. Prior to receiving the letter, Mezzetti's attorney discussed the accident

9  with Howard and had concluded that Clewett and Howard had been involved in a "high speed

10 chase." Further, on May 22, 1995, Mezzetti's attorney spoke to State Farm Claims Representative

11 Danielle Spier ("Spier") regarding the accident. The notes of the conversation retained by

12 Mezzetti's attorney indicate that they discussed a number of issues, including the fact that there was

13 a "coverage issue" regarding the truck because Clewett had replaced her truck on the State Farm

14 policy with her Camry. The notes also reflect that Mezzetti's attorney told Spier the substance of his

15 conversations with Howard regarding the "high speed chase." The conversations with Howard and

16 with Spier thus clearly put Mezzetti's attorney on notice that Clewett's Camry was insured with

17 State Farm, and that her Camry was potentially "involved" in the accident because of the "high

18 speed chase." In light of these conversations, Mezzetti should have questioned the reference to only

19 one vehicle in the June 30, 1995 letter. Accordingly, the fraud claims are time barred.

20              **2. Mezzetti Cannot Establish the Elements of Fraud**

21        Second, State Farm contends that Mezzetti cannot establish the elements of fraud. To prevail

22 on a claim for fraud, a plaintiff must prove the following elements: (1) a misrepresentation of

23 material fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5)

24 resulting damage. Engalla v. Permanente Medical Group, Inc., 15 Cal.4th 951, 974 (1997).

25 Negligent misrepresentation requires a false representation by one who had no reasonable ground for

26 believing it was true. Fox v. Pollack, 181 Cal.App.3d 954, 962 (1986).

27

28                                    10

1    Mezzetti's fraud claim is based upon State Farm's representation that: "[b]ased on our

2    investigation, there was no State Farm policy in force on the vehicle involved on the above date of

3    loss.  Therefore, there is no coverage under this State Farm policy." Curley Decl., Ex. 5.  As

4    discussed previously, the statement does not contain any misrepresentation.  Furthermore, there is no

5    evidence that State Farm knew the statement in its letter was false.  Nor is there evidence of State

6    Farm's intent to induce reliance.  In addition, Mezzetti could not have reasonably relied upon the

7    statement for reasons already discussed previously in Section A.1. to this Order.  Therefore, the

8    fraud claims fail for lack of proof.

9                                      **V.  CONCLUSION**

10    Mezzetti's first claim is untimely, having been brought after the expiration of the statute of

11    limitations.  The first claim is also barred based upon Clewett's failure to give State Farm notice of

12    the Mezzetti I lawsuit.  Further all of Mezzetti's fraud claims fail because (1) they are

13     untimely, having been brought after the expiration of the statute of limitations, and (2) they are

14    unsupportable in light of the undisputed evidence.  Therefore, Court grants State Farm's motion for

15    summary judgment.  Nothing in this Order is intended to reflect on the timeliness of the Mezzetti II

16    lawsuit.

17    Dated: January 4, 2006                               /s/James Ware
         04cv3022sjmezzetti                                JAMES WARE
18                                                         United States District Judge

19

20

21

22

23

24

25

26

27

28                                           11

1    **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2    Howard G. Frank howardfrank@hgfranklaw.com
     Robert L. Mezzetti rob@mezzettilaw.com
3    Stephen M. Hayes shayes@hayesdavis.com
     Stephen P. Ellingson sellingson@hayesdavis.com

4    **Dated: January 4, 2006**                          **Richard W. Wieking, Clerk**

5

6                                                         **By:/s/JWchambers**
                                                               **Melissa Peralta**
7                                                         **Courtroom Deputy**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California